UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JASPER

       Plaintiff,

v.

Case No. 09-11119
Hon. Lawrence P. Zatkoff

FORD MOTOR COMPANY,
INTERNATIONAL UNION, UNITED
AUTOMOBILE AEROSPACE AND
AGRICULTURAL WORKERS OF
AMERICA, and UAW LOCAL 600,

       Defendants.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 2, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Defendant UAW Local 600's motion for summary judgment [dkt 22] and Defendant International Union, United Automobile Aerospace and Agricultural Workers of America's motion for summary judgment [dkt 32]. Defendant UAW Local 600's motion for summary judgment has been fully briefed. Plaintiff has responded to Defendant International Union, United Automobile Aerospace and Agricultural Workers of America's motion for summary judgment, but a reply brief was not timely submitted. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set

forth below, both motions are GRANTED.

## II. BACKGROUND

Plaintiff is employed as a Waste Water Treatment Operator ("WTO") by Defendant Ford Motor Company ("Ford"), and Plaintiff works out of the Dearborn Engine Unit in Dearborn, Michigan. As a WTO, Plaintiff monitors and treats storm water and oily waste water generated by the facility. The WTO position is not a skilled trade position. Plaintiff began his employment with Ford in 1964 and became a member of Defendant UAW Local 600 ("Local 600"), an affiliate of Defendant International Union, United Automobile Aerospace and Agricultural Workers of America ("UAW").

On March 26, 1982, Local 600 and Ford entered into an agreement permitting Ford to phase out the WTO position. The following letter agreement ("the 1982 agreement") reflects this agreement:

> As a result of the 1979 wage inequity discussions concerning the subject classification, it was agreed to by the parties that the three employees in the Dearborn Engine Plant Unit that have this classification would be "red circled", and transferred to the Maintenance and Construction Unit. It was further understood that when any of the incumbents left the classification for reasons such as: retirement, promotion, death or quit; they would be replaced by employes [sic] classified as Power Service Operator - Heat, Steam, Air and Water.
>
> Your concurrence in the above will be acknowledged by your signature below.

The letter agreement was signed by the Dearborn Engine Plant's president and hourly personnel and labor relations supervisor, the Maintenance and Construction Unit's president, and Local 600's second vice president. Under the 1982 agreement, when any of the three WTOs retired, received a promotion, died, or quit, Ford would replace them with Power Service Operators ("PSO"). As

2

contemplated by the 1982 agreement, Ford has not hired new employees with the WTO classification, instead hiring PSOs to handle its waste water treatment needs. PSOs are skilled trade positions with a broad skill set and are authorized to treat heat, steam and air in addition to treating waste water. Plaintiff is the last employee with the WTO classification.

In response to Ford's decision to phase out the WTO position, Local 600 negotiated protections for the remaining employees with the WTO classification in the form of preferences for performing available waste water treatment work. The parties dispute the extent of this preference. Plaintiff contends that under the 1982 agreement, Ford was required to give the remaining WTOs the first opportunity to perform any waste water treatment when such needs arose. UAW argues that WTOs were given first preference to perform available waste water treatment work that could not be done by PSOs during their normal working hours; thus, when volume for waste water work was high, the WTOs would have additional opportunities to work. UAW contends that Plaintiff's interpretation of the agreement would have undermined the agreement to assign waste water work to PSOs.

Traditionally, the WTOs worked on a seven-day operation, in which the WTOs worked intermittently for seven days and then received several days off in a row, which produced increased overtime and bonus opportunities. In 2004, Ford removed Plaintiff from the seven-day rotation and placed him on a regular five-day work week. As a result, certain of Plaintiff's overtime and bonus opportunities decreased. After being removed from the seven-day schedule, Plaintiff complains that Ford repeatedly allowed PSOs to treat water on days Plaintiff was not scheduled to work, in alleged violation of the 1982 agreement. Plaintiff contends that he should have been offered overtime opportunities to treat waste water before such work was offered to the PSOs during their normal

3

working hours.

Beginning in 2004, Plaintiff filed dozens of grievances challenging his schedule change and subsequent loss of overtime opportunities. The Union defendants were able so resolve some grievances in Plaintiff's favor, but Local 600 did not file many of Plaintiff's grievances because it determined them to be lacking in merit.

On February 3, 2005, Plaintiff filed a lawsuit in the United States District Court for the Eastern District of Michigan against Local 600 and its president, claiming that Local 600 failed to represent him with respect to his 2004 schedule change. The court dismissed Plaintiff's case with prejudice under Fed. R. Civ. P. 37 for Plaintiff's discovery violations.

On November 30, 2005, Plaintiff filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") against UAW and Local 600. Plaintiff charged that the defendants failed to represent him concerning his schedule change. The NLRB dismissed Plaintiff's charges on February 1, 2006, on the basis that Plaintiff failed to show that Local 600 acted with unlawful considerations. Specifically, the NLRB noted that Local 600 did not file Plaintiff's grievances because it reasonably believed that a contract violation had not occurred.

On August 18, 2006, Plaintiff filed another unfair labor practice charge against the UAW and Local 600, alleging that the unions failed to represent him regarding the change in his schedule and loss of overtime in retaliation for filing a previous charge. The NLRB dismissed the charge for lack of merit. The NLRB dismissed Plaintiff's appeal because the defendants did not violate their duty of fair representation and because certain claims were untimely.

On March 8, 2007, Plaintiff filed a third charge with the NLRB, alleging that UAW and Local 600 breached their duty of fair representation regarding Plaintiff's reclassification, the

4

reduction of his scheduled work hours, and the resultant loss of wages since 2004. The NLRB dismissed the charge, reasoning that Plaintiff's claims were outside the National Labor Relation Act's six-month statute of limitations period. His appeal was subsequently dismissed as well.

In his current lawsuit, Plaintiff claims that Defendants UAW and Local 600 breached their duty of fair representation under the National Labor Relations Act by failing to file Plaintiff's allegedly meritorious grievances.[1]

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions,

---

[1] Plaintiff alleges separate claims against Defendant Ford, which are not affected by this opinion.

answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Under Article 33, Section 5 of the UAW Constitution, an aggrieved member must fully exhaust internal union appeals "before going to a civil court or governmental agency for redress." Court have given force to this requirement. *See Reinhardt v. UAW*, 636 F. Supp. 864, 867 (E.D. Mich. 1986) ("It is well established that union members, particularly U.A.W. members, must exhaust the internal remedies provided in their constitution before resorting to the courts.") (citations omitted); *see also Monroe v. UAW*, 723 F.2d 22, 24 (6th Cir. 1983). Here, UAW and Local 600 (collectively, "Defendants") argue that Plaintiff did not exhaust his union appeal remedies, such as appealing Local 600's decision to the Convention Appeals Committee or the Public Review Board. In his response, Plaintiff does not deny that he failed to exhaust his union appeal remedies. Instead, Plaintiff argues merely that Defendants breached their duty of fair representation.

"Exhaustion of union appeals procedures is usually required . . . unless resort to the procedures is demonstrably futile." *Monroe*, 723 F.2d at 24. The procedures are futile when a union breaches its duty of fair representation. *Vaca v. Sipes*, 386 U.S. 171, 186 (1967) (stating that an "employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent

breached its duty of fair representation in its handling of the employee's grievance"). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190 (citations omitted). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness[]' . . . as to be irrational." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78 (1991) (internal citation omitted). "Any substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Id.* at 78. Furthermore, "a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious." *Vaca*, 386 U.S. at 195; *see also White v. Detroit Edison Co.*, 472 F.3d 420, 427 (6th Cir. 2006) ("[The plaintiff's] grievance [may have] deserved arbitration, and a majority of the Local 223 board may have been wrong. But that does not mean the majority acted arbitrarily or in bad faith, which is what would be required for a reversal under *Vaca*.").

Here, Defendants argue that Plaintiff has failed to demonstrate that their conduct in declining to pursue Plaintiff's grievances was arbitrary, discriminatory, or in bad faith. Defendants contend that Local 600 did not file Plaintiff's grievances because Local 600 believed that they lacked merit, and that its decision was not so far outside the wide range of reasonableness as to be irrational. Significantly, Defendants assert that the contract under which Plaintiff basis his claims—the 1982 agreement—does not state that WTOs such as Plaintiff were to be offered overtime opportunities to treat waste water before such work was offered to the PSOs during their normal working hours. Plaintiff presents no evidence supporting this assertion. Also, as Defendants point out, Plaintiff

7

admitted in his deposition that he is unaware of any contractual provision giving WTOs company-wide seniority for overtime purposes. Moreover, even if Plaintiff's grievances were meritorious, this alone is insufficient to prove that Defendants breached their duty of fair representation. *See Vaca*, 386 U.S. at 195. Therefore, the Court finds that Defendants have satisfied their initial burden of demonstrating that there is an absence of evidence to support Plaintiff's case.

The Court also finds that Plaintiff has failed to rebut Defendants' assertions by designating specific facts showing that there is a genuine issue for trial. Plaintiff alleges that Defendants' conduct in declining to pursue his grievances was arbitrary and discriminatory based on the following: (1) the failure to file meritorious grievances "is the epitome of actions that are arbitrary and discriminatory"; (2) Local 600's own words support the fact that its actions were arbitrary; (3) Local 600 failed to offer a rational explanation for its failure to file multiple of Plaintiff's grievances; and (4) Plaintiff has filed multiple charges and lawsuits, and such "acts are not the actions of a man who is merely mistaken." The Court will address Plaintiff's arguments in turn.

First, a union's failure to file a meritorious grievance is alone insufficient to constitute a breach of the duty of fair representation. *See Vaca*, 386 U.S. at 195. Second, the Court disagrees that Local 600's words support the fact that its actions were arbitrary. Plaintiff contends that Local 600 once stated that Plaintiff was not entitled to being called first to treat waste water, and that it later stated that Plaintiff was to be given first priority to treat waste water because of his red-circling status. Since Plaintiff does not identify where and when Local 600 made these alleged statements, the Court is unable to determine if such statements were in fact made or the context in which they were made. However, even accepting Plaintiff's allegations as true, the statements alone are insufficient to demonstrate arbitrariness, discrimination, or bad faith. As mentioned above, there

are circumstances under which Defendants would agree that Plaintiff has first preference to treat waste water, and there are other circumstances under which Defendants believe that Plaintiff does not have first preference to treat waste water.

Third, the Court disagrees that Defendants have failed to offer a rational explanation for why Plaintiff's grievances were not pursued. Defendants have stated quite clearly that the grievances were not pursued because Local 600 believed them to be lacking in merit, both under the 1982 agreement and the collective bargaining agreement. Fourth, although Plaintiff contends that his actions in filing complaints, charges, and lawsuits demonstrate that his claims were meritorious, Plaintiff fails to cite any applicable legal authority standing for the proposition that filing claims is probative of the merit of such claims. Once more, even if Plaintiff's grievances were meritorious, this alone is insufficient to demonstrate that Defendants breached their duty of fair representation. Thus, the Court finds that summary judgment is appropriate with respect to Plaintiff's claims against Defendants UAW and Local 600 for breach of the duty of fair representation.

## V. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant UAW Local 600's motion for summary judgment [dkt 22] is GRANTED.

IT IS FURTHER ORDERED that Defendant International Union, United Automobile Aerospace and Agricultural Workers of America's motion for summary judgment [dkt 32] is GRANTED.

IT IS SO ORDERED.

                                                      S/Lawrence P. Zatkoff
                                                     LAWRENCE P. ZATKOFF
                                                     UNITED STATES DISTRICT JUDGE

Dated: August 2, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 2, 2010.

                                                       S/Marie E. Verlinde
                                                     Case Manager
                                                     (810) 984-3290