UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JASPER

    Plaintiff,

v.

Case No. 09-11119
Hon. Lawrence P. Zatkoff

FORD MOTOR COMPANY,
INTERNATIONAL UNION, UNITED
AUTOMOBILE AEROSPACE AND
AGRICULTURAL WORKERS OF
AMERICA, and UAW LOCAL 600,

    Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 22, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant Ford Motor Company's motion for summary judgment [dkt 33]. The motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's motion is GRANTED.

**II. BACKGROUND**

Plaintiff, a 68 year-old African American man, is employed as a Waste Water Treatment Operator ("WTO") by Ford Motor Company ("Defendant"), and Plaintiff works out of the Dearborn

Engine Plant in Dearborn, Michigan. As a WTO, Plaintiff monitors and treats storm water and oily wastewater generated by the facility. The WTO position is not a skilled trade position. Plaintiff began his employment with Defendant in 1964, and became a member of UAW Local 600 ("Local 600"), an affiliate of International Union, United Automobile Aerospace and Agricultural Workers of America ("UAW").[1]

On March 26, 1982, Local 600 and Defendant entered into an agreement with UAW, which permitted Defendant to phase out the WTO position. Under the 1982 agreement, when any of the three WTOs retired, received a promotion, died, or quit, Defendant would replace them with Power Service Operators ("PSO"). As contemplated by the 1982 agreement, Defendant has not hired new employees with the WTO classification, instead hiring PSOs to handle its wastewater treatment needs. Plaintiff is the last employee with the WTO classification.

The PSOs are skilled trade positions with a broad skill set and are authorized to treat heat, steam and air in addition to treating wastewater. The PSOs also operate and repair all of the non-electric utilities in the Engine Plant, including the building and heating systems, boilers, air compressors, and refrigeration and cooling systems. While PSOs are trained to treat wastewater, Plaintiff is not trained to perform the non-wastewater work performed by the PSOs. Due to the critical nature of their duties, PSOs are assigned to work every shift, 365 days per year, regardless of whether the Engine Plant's production lines are running. PSOs work seven-day schedules, meaning they have two floating days off every seven days and one long weekend. Traditionally, the

---

[1] In Plaintiff's complaint, Plaintiff named Local 600 and UAW as Defendants as well. In the Court's August 2, 2010, opinion and order, the Court granted Local 600's and UAW's motions for summary judgment, leaving only Plaintiff's claims against Defendant Ford Motor Company (hereinafter, "Defendant").

WTOs worked on a similar seven-day schedule.

In 2004, Defendant removed Plaintiff from the seven-day schedule and placed him on a regular five-day work week. Plaintiff claims that this scheduling change prevented him from being able to earn consistent overtime opportunities. Plaintiff also complains that after being removed from the seven-day schedule, Defendant repeatedly allowed PSOs to treat wastewater on days Plaintiff was not scheduled to work, in alleged violation of the 1982 agreement. Plaintiff contends that he should have been offered overtime opportunities to treat wastewater before such work was offered to the PSOs during their normal working hours.

On January 12, 2005, Plaintiff filed a complaint in the United States District Court for the Eastern District of Michigan, alleging that Defendant removed him from the seven-day schedule based on his race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). On April 18, 2006, that complaint was dismissed with prejudice under Fed. R. Civ. P. 37(d) based on Plaintiff's failure to comply with the rules of discovery, as well as Plaintiff's failure to adequately respond to that court's order to show cause as to why the case should not be dismissed for Plaintiff's noncompliance.

On August 7, 2008, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), wherein Plaintiff complained that he was removed from the seven-day schedule based on his age and race. That charge was dismissed, and Plaintiff was issued his notice of right-to-sue letter on September 30, 2008. The right-to-sue letter instructed Plaintiff to file his lawsuit within 90 days if he wished to pursue those claims. Plaintiff did not do so.

On January 15, 2009, Plaintiff filed his most recent EEOC charge, alleging that he was denied overtime by his supervisor from December 24, 2008, through January 1, 2009—the Engine

Plant's holiday shut down period—while younger and Caucasian PSOs were allowed to work overtime during that period. He claimed that the denial of overtime was due to his race and age and/or was in retaliation for his prior EEOC filings and grievances, in violation of Title VII and the Age Discrimination in Employment Act ("ADEA"). Plaintiff was issued a notice of right-to-sue, and filed this lawsuit within the time period provided for in the right-to-sue letter. In this action, Plaintiff alleges race discrimination and retaliation under Title VII and age discrimination under the ADEA.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is

a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

### A. Defendant's Conduct Complained of in the 2005 Litigation

Defendant argues that to the extent Plaintiff's complaint seeks recovery for alleged discriminatory overtime practices pre-dating the district court's April 18, 2006, order dismissing his Title VII claim, including the red-circling[2] of his position in 1982 and his removal from the seven-day work schedule, his claims are barred by res judicata.

Under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. U.S.*, 440 U.S. 147, 153 (1979) (citations omitted). "For res judicata to apply, the following elements must be present:

> (1) a final decision on the merits by a court of competent jurisdiction;
> (2) a subsequent action between the same parties or their "privies";
> (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

---

[2] The term "red-circling" refers to the status of Plaintiff's position following the 1982 agreement, in that Plaintiff was allowed to maintain his position as a WTO until such time that he retired, received a promotion, died or quit, regardless of whether there was a need for the WTO position or whether Plaintiff was the only employee with that designation.

Here, Plaintiff does not dispute that this litigation and the prior litigation involve the same parties, that the issues sought to be litigated here were, or should have been, raised in the prior action, or that there is an identity in the causes of action. Rather, Plaintiff responds that his claims are not barred by res judicata because the district court did not make a final decision on the merits of his claim in its 2006 order. The Court, however, disagrees.

Under Fed. R. Civ. P. 41(b), "[u]nless [a] dismissal order states otherwise, a dismissal under this subdivision (b) *and any dismissal not under this rule*—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—*operates as an adjudication on the merits*." (emphasis added). Thus, the dismissal of Plaintiff's Title VII claim under Fed. R. Civ. P. 37 and for failing to adequately respond to the court's show-cause order constituted a final decision on the merits, and bars issues that were, or should have been, raised in the prior action from being litigated in subsequent actions. Since Plaintiff does not dispute that the discrimination and retaliation issues raised in this action were, or should have been, raised in the prior action, his claims are barred by res judicata to extent that they pre-date the district court's April 18, 2006, order of dismissal.

**B.  Defendant's Conduct Complained of in his 2008 EEOC Charge**

Next, Defendant claims that to the extent Plaintiff's complaint seeks recovery for alleged discriminatory overtime practices occurring prior to September 2008, Plaintiff's claims are time-barred due to Plaintiff's failure to comply with the procedural requirements of Title VII and the ADEA.

Both Title VII and the ADEA require that discrimination charges be filed with the EEOC within 300 days of the alleged unlawful employment practice and that the complainant receive and

timely act upon the EEOC's notice of right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e). After the EEOC issues a right-to-sue letter, the complainant has 90 days to bring a civil action in a federal district court. 29 U.S.C. § 626(e). Failure to comply with either requirement warrants a dismissal of the claims. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Ruiz v. Shelby County Sheriff's Dep't*, 725 F.2d 388, 391 (6th Cir. 1984) (holding that an alleged failure to comply with the ninety-day filing period under 42 U.S.C. § 2000e-5(f)(1) is an affirmative defense).

On September 30, 2008, Plaintiff was issued his right-to-sue letter for EEOC Charge No. 471-2008-0301C, in which Plaintiff alleged that Defendant conducted discriminatory overtime practices as early as 2004 and continuing until the time the charge was filed. If Plaintiff wished to pursue those claims in court, he was required to file his complaint within 90 days, which he did not.

Plaintiff responds that despite his failure to file an action within 90 days of receiving his notice of right-to-sue letter, his discrimination claims are preserved by the Lilly Ledbetter Fair Pay Act of 2009 ("LLFPA"), 42 U.S.C. § 2000e-5(e)(3)(A), which alters the time-line for filing claims based on discrimination in compensation. Under the LLFPA, a discriminatory compensation decision occurs both when a discriminatory compensation decision is made and when an individual is affected by the decision, including each time wages, benefits, or other compensation are paid. § 2000e-5(e)(3)(A). Thus, under proper circumstances, the LLFPA may preclude a plaintiff's claims from being time-barred even though the plaintiff failed to file a timely EEOC charge within the requisite 300 days of the alleged discriminatory compensation decision.

However, the Court finds that the LLFPA does not preserve Plaintiff's right to assert his claims despite his failure to file an action within 90 days of receiving his notice of right-to-sue letter.

7

The LLFPA applies to claims of discrimination in *compensation*, but Plaintiff has not alleged a discriminatory compensation claim. § 2000e-5(e)(3)(A). *See Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 374 (D.C. Cir. 2010) ("[I]n employment law the phrase 'discrimination in compensation' means paying different wages or providing different benefits to similarly situated employees[.]") (citing *Anderson v. Zubieta*, 180 F.3d 329, 338 (D.C. Cir. 1999), *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008) and *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991)). *See also Lacey v. Robertson*, No. 99-1424, 2000 U.S. App. LEXIS 15427, at 5 (6th Cir. June 21, 2000) (discussing discrimination in compensation in terms of unequal pay for equal work). Plaintiff has not alleged that African-American or older employees are paid lower wages for performing substantially the same work as employees of other races or younger ages, nor has Plaintiff claimed that Defendant issued Plaintiff poor performance ratings based on his race or age and then used those evaluations to pay him at a lower rate. Instead, Plaintiff complains of *scheduling* decisions that resulted in him working fewer hours of overtime. Federal courts interpreting the LLFPA have held that the statute is not applicable outside of the compensation context. *See Schuler*, 595 F.3d at 374 (holding that the LLFPA does not apply to "failure to promote" claims because such claims do not involve compensation decisions despite their affect on an individual's compensation); *Ekweani v. Ameriprise Fin., Inc.*, No. CV-08-01101-PHX-FJM, 2010 U.S. Dist. LEXIS 24219, at *12-13 (D. Ariz. Mar. 3, 2010) (same). *See also Noel v. Boeing Co.*, No. 08-3877, 2010 U.S. App. LEXIS 20217, at *18 (3rd Cir. Oct. 1, 2010) (rejecting the LLFPA's application to failure to promote claims, and stating "the plain language of the [LL]FPA covers compensation decisions and not other discrete employment decisions").

Accordingly, to the extent Plaintiff wishes to litigate allegedly discriminatory and retaliatory

overtime practices that were covered in his 2008 EEOC Charge, his claims are dismissed as untimely for failing to file an action within 90 days of receiving his notice of right-to-sue letter.

**C.     Failure to Promote**

In Plaintiff's complaint, Plaintiff asserts that he was denied promotional opportunities because of his age and race. In its motion for summary judgment, Defendant argues that Plaintiff's failure to promote claims should be dismissed because he never submitted complaints to the EEOC alleging failure to promote, and that Plaintiff has not identified any promotional opportunities that he sought and was denied. Since Plaintiff does not address Defendant's arguments in his response, summary judgment is granted with respect to Plaintiff's failure to promote claims. *See Ctr. For Biological Diversity v. Rural Utils. Serv.*, No. 5:08-292-JMH, 2009 WL 3241607, at *3 (E.D. Ky. Oct. 2, 2009) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived, and grant the motion.") (citing *Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx. 328, 331 (6th Cir. 2008)).

**D .     Defendant's Conduct from December 24, 2008, to January 1, 2009**

Plaintiff's only remaining claims are that he was wrongfully denied overtime during the Engine Plant's 2008 holiday-shut down, which occurred from December 24, 2008, to January 1, 2009.[3]

---

[3]In Plaintiff's complaint, Plaintiff states that he was discriminated and retaliated against when Defendant required him to submit certain paperwork regarding the results of his wastewater treatment. Defendant argues that Plaintiff's claims should be dismissed to the extent they relate to the paperwork, noting that such a requirement cannot constitute an adverse employment action. Since Plaintiff does not respond to this argument, summary judgment is granted with respect to Plaintiff's claims related to his required paperwork. *See Ctr. For Biological Diversity*, 2009 WL 3241607, at *3.

9

*1. Race and Age Discrimination*

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, the ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

A plaintiff may meet his evidentiary burden by producing direct or circumstantial evidence of discrimination. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). Claims relying on circumstantial evidence of discrimination are analyzed under the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and later refined in *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). In order to establish a prima facie case of discrimination using circumstantial evidence under the *McDonnell Douglas* framework, the plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently from similarly situated employees outside the protected class. *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

"If the plaintiff establishes his prima facie case, then an inference of discrimination arises. At that point the burden of production shifts to the employer, who must set forth a legitimate, nondiscriminatory reason for" the adverse action. *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 731 (6th Cir. 2000) (citing *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 729 (6th Cir.

1999)). If the employer offers evidence of legitimate non-discriminatory reasons for the adverse action, the plaintiff has the opportunity to demonstrate that the employer's proffered reason for taking the adverse action was pretextual. *Barnhart v. Pickrel, Schaeffer, Ebeling Co., L.P.A.*, 12 F.3d 1382, 1390 (6th Cir. 1993). The plaintiff can establish pretext by showing that the employer's proffered reasons (1) have no basis in fact, (2) were not the actual reasons, or (3) were insufficient to explain the adverse action. *Barnhart*, 12 F.3d at 1390 (citations omitted).

When an action is based on direct evidence of discrimination—*i.e.*, evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions—the plaintiff need not proceed under the *McDonnell Douglas* framework. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). In such cases, the burden shifts to the employer to demonstrate, by a preponderance of the evidence, that it would have made the same decision absent the impermissible motive. *Daugherty v. Saja Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008). Since Plaintiff does not contend that direct evidence of discrimination exists, the Court will analyze Plaintiff's discrimination claims under the *McDonnell Douglas* framework.

The Court finds that Plaintiff has failed to establish a prima facie case of discrimination under the *McDonnell Douglas* framework because Plaintiff has not shown that he suffered an adverse employment action or that he was treated differently from similarly situated employees. Plaintiff's discrimination claim rests on the argument that he was denied overtime opportunities to treat wastewater between December 24, 2008 and January 1, 2009. However, Plaintiff has not identified any overtime hours for the purpose of treating wastewater that he was denied in favor of PSOs during this time. In his deposition, Plaintiff even acknowledged that he was the only employee who treated wastewater at the Engine Plant during this period. Plaintiff argued during his

deposition that he had the right to treat wastewater at other Ford facilities in addition to the Engine Plant, but Plaintiff does not make that argument in his briefing or respond to Defendant's contention that he had no right to treat wastewater at other facilities. Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's claims for race and age discrimination.

### *2. Retaliation*

To establish a claim for retaliation under Title VII or the ADEA, a plaintiff must demonstrate: (1) that he engaged in protected activity; (2) that the protected activity was known to the employer; (3) that he suffered an adverse employment action; and (4) causation between the protected activity and the adverse employment action. *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007).

The Court finds that Plaintiff's retaliation claim fails for the same reason his discrimination claims failed; Plaintiff claims that he was retaliated against when he was denied overtime opportunities from December 24, 2008, to January 1, 2009, but Plaintiff has not produced any evidence that he was denied any overtime opportunities during that period, or that any individual other than Plaintiff treated wastewater during that period. Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's retaliation claim.[4]

## V. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment [dkt 33] is GRANTED.

---

[4]Defendant also argues that Plaintiff's cause of action should be dismissed on the basis of judicial estoppel due to Plaintiff's alleged act of concealing the existence of this action in an unrelated bankruptcy proceeding. However, since the Court has dismissed Plaintiff's claims on the merits, this issue is moot.

IT IS FURTHER ORDERED that since Plaintiff's claims against Defendants UAW Local 600 and UAW have previously been dismissed, this case is now closed.

IT IS SO ORDERED.

                               S/Lawrence P. Zatkoff
                               LAWRENCE P. ZATKOFF
                               UNITED STATES DISTRICT JUDGE

Dated: October 22, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 22, 2010.

                               S/Marie E. Verlinde
                               Case Manager
                               (810) 984-3290